## Case No. 11,857.

### The RISING DAWN.

[Blatchf. Pr. Cas. 368; 20 Leg. Int. 229.] [1]

District Court, S. D. New York. June 25, 1863.

PRIZE—FORMER RELEASE—APPROACHING BLOCKADED COAST.

1. This vessel was seized as prize and taken to Key West, and released by the prize court there on bonds, and permitted to proceed on her voyage. She was afterwards arrested again as prize, for an alleged attempt to violate the blockade after leaving Key West. *Held,* that her release at Key West did not absolve her from her obligation not to violate the blockade afterwards.

2. Approaching a blockaded coast from necessity. Vessel and cargo condemned for an attempt to violate the blockade.

3. Leave given to the claimants to move within four days for a rehearing on further proofs.

Smith & Andrews, for libellants.
Mr. Edwards, for claimants.

BETTS, District Judge. This vessel and cargo were captured, as prize of war, March 25, 1863, at sea, off the coast of North Carolina, by the United States gunboat Mount Vernon, and were sent into this port for adjudication. They were libelled in this court for condemnation, April 14th thereafter. The British consul intervened in the suit, and filed his claim in behalf of British owners, May 12th thereafter, and the case was submitted to the court on written briefs, by the counsel for the respective parties, June 8, 1863.

The vessel and cargo were British property, and her crew were British subjects. She was lying in the port of Nassau, N. P., in December last, and, about the 5th of that month, was despatched from that port to Key West, under her master, Ryan, with a cargo of salt, laden on board by Sawyer & Menendez, of Nassau, who appointed her master, and she was to proceed from Key West with that cargo to New York. On her passage from Nassau to Key West she was seized by a United States ship-of-war, and taken as prize into the port of Key West, and delivered into the custody of the prize court in that district. By the order of that court, under the proceedings in prize, the vessel was released from seizure, on depositing in court bonds for the appraised valuation of the vessel and cargo, and was permitted to prosecute the voyage to New York, carrying the same cargo with her. The foregoing facts are authenticated by official documents found with the vessel on her last capture, March 25, 1863. She proceeded to sea with her cargo, from Key West, for the port of New York, March 15th, and, on the 25th of the same month, was captured and sent into this port, with the same cargo on board. The libellants insist that she was intercepted in making an attempt to violate the blockade of the coast of North Carolina. The defence set up thereto is: (1) The exemption, by law, of

1 [Reported by Samuel Blatchford, Esq. 20 Leg. Int. 229, contains only a partial report.]

the vessel and cargo, under the preceding facts, from arrest for the cause alleged, after her restoration by the proceedings in the prize court at Key West; and (2) that legal cause of justification is shown for the approach of the schooner to the blockaded coast, because of the state of necessity for immediate relief in which she was placed at the time of her apprehension. It is alleged in the evidence of the master, upon his preparatory examination, that at the time of his capture he was in sight of the North Carolina coast, and in the vicinity, as he supposes, of Wilmington, and that he was forced to that place by violence of weather, the want of water, and injuries sustained in his sails, after his departure from Key West, rendering it necessary for him to obtain relief. The whole tenor of the master's testimony on that subject is exceedingly indefinite and unsatisfactory, and strongly inconsistent with the entries and statements made upon the log of the vessel, so long as those entries continued. The master and mate were aware of the existence of the blockade of the place the vessel was endeavoring to enter when she was seized, and no colorable excuse is established in the facts, nor is any intimated, for her being in the position at which she was captured, except the argumentative suggestion, that, as she was on a voyage from Key West to New York, authorized by the action of the prize court, she became impliedly discharged and relieved from the responsibility she would have incurred had that been her original and continuing voyage. I cannot perceive any distinction or palliation, whether the inception of the voyage was at Nassau, or at Key West, or whether the vessel was pursuing an intermediary course through both ports, with the interruption of a positive arrest and a conditional release on bail. That release cannot be claimed to amount to a discharge from the obligation to avoid carrying articles contraband of war to an enemy port, or violating an embargo.

If the proceedings in the prize court at Key West were equivalent to the actual forfeiture of the vessel and the transfer of her past ownership to other hands, she still remained subject to the public law, and liable to confiscation for attempting to enter a blockaded port, if remaining a neutral, or for carrying on trade or traffic with the enemy, if a home bottom. I think it clear, upon the proofs produced on the trial, that the vessel left Key West, with her cargo of salt, with design to transport the same to the blockaded port she was actually attempting to enter when arrested, it being well known to the officers and crew on board at the time that the place was then under an efficient blockade. I forbear rehearsing in further detail the evidence submitted to the court on the hearing, and order a decree of condemnation and forfeiture of the vessel and cargo to be entered, with leave to the claimant to move the court, within four days from the entry and service of notice of the decree, for a rehearing in the suit, upon further proofs according to the usual procedure in such cases. Order accordingly.